# Exhibit A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LIV GOLF, INC, | ) | |
| | ) | Case No. 1:22-mc-00126-CJN |
| Movant, | ) | |
| | ) | Underlying Case, LIV Golf, Inc., et |
| v. | ) | al. v. PGA Tour, Inc., pending in the |
| | ) | United States District Court for the |
| CLOUT PUBLIC AFFAIRS, LLC, | ) | Northern District of California: |
| | ) | |
| Respondent. | ) | Case No. 5:22-cv-04486-BLF |
| | ) | |

**DECLARATION OF DAVID POLYANSKY**

I, David C. Polyansky, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the President of Clout Public Affairs, LLC ("Clout").

2. Clout is a boutique public relations firm based in Washington, D.C., and Texas, although its main hub of operations is in Washington. I reside in Texas.

3. Clout does not have an office in San Francisco, California, and does not do any business in that district.

4. Clout was hired by the PGA Tour ("PGA") in November of 2021, to help guide strategic and rapid response communications and to provide strategic support and advance its overall brand. Clout was not hired as the PGA Tour's press agent and had no authority to issue statements on behalf of the Tour. Instead, Clout was hired to provide strategic counsel and provide feedback on the Tour's own messaging.

5. While there was some initial discussion of the creation of a 501(c)(4) in order to assist PGA Tour with global messaging, this never came to fruition and the idea was abandoned.

1

6. Clout was hired by 9/11 Justice in June of 2022, after Brett Eagleson approached the PGA Tour to offer it assistance in critiquing LIV's connection to the Kingdom of Saudi Arabia. Since its hiring, Clout has assisted 9/11 Justice with general fundraising, advancing its brand, media relations, and attempts to engage in public discussion regarding the September 11, 2001, terrorist attacks, and the alleged connections to the Kingdom of Saudi Arabia. Clout has assisted 9/11 Justice with issues that have nothing to do with LIV, golf, or the plaintiffs to this suit. For example, it has advised 9/11 Justice on its strategies surrounding efforts to petition the federal and local governments, including efforts of families to seek federal funding support for victims' families that recently passed through Congress. Finally, Clout also assists 9/11 Justice with public statements that have referenced LIV, golf, or golfers.

7. Clout does not serve as the press agent or make statements on behalf of 9/11 Justice. Similarly, Clout does not issue press releases or other public communications on Clout's own behalf that are actually attributable to, drafted by, or approved by the PGA Tour, 9/11 Justice, or any other client.

8. Plaintiffs' Memorandum of Law attributes some activities to Clout that Clout in fact did not orchestrate or plan. For example, Clout did not orchestrate, plan, or assist in the drafting, circulation, or delivery of a letter from eleven mayors in opposition to LIV playing in Portland, Oregon. Clout has no knowledge of how the eleven mayors organized their opposition to the Saudi Golf League.

9. 9/11 Families is not a Clout client.

10. Enforcement of the discovery requests in this case would result in the disclosure of Clout internal communications about our strategies, discussions, planning, and even brainstorming sessions that were never presented to Clout's PGA Tour client, its 9/11 Justice client, or any other

client. Discovery would also disclose our approach and business processes and techniques for working with all of our clients, and even our own personal activities.

11. Disclosure of this information would reveal the internal Clout employees who originated ideas, tactics, and proposed public relations strategies. Revealing such information will discourage Clout associates from freely and openly communicating ideas among each other and with the clients and other groups, such as 9/11 Justice, with which Clout has associated. This self-censorship will chill and muzzle association and the resulting political speech.

12. Particularly in a public relations context, developing new ideas involves brainstorming and testing ideas against the group's collective judgment. It is integral that Clout employees feel free to question, challenge, and push for innovative solutions and strategies. Forcing Clout employees to reveal their internal dialogue, thoughts, and work product will chill internal discussion at Clout in its current and future matters.

13. Additionally, Clout is well aware that professionals who speak out publicly against the Kingdom in the United States have suffered significant and serious retaliation from the Kingdom through agents in the United States or abroad. Clout is well aware of the widely reported accusation that Jamal Khashoggi, a Washington Post journalist, Saudi dissident, and potential witness in a federal litigation by 9/11 families against the Kingdom, was lured to Turkey and murdered in order to stop his political advocacy in the United States. Other U.S.-based professionals who have written critically of the Saudis report having been hacked or worse. And Clout's client, an association of 9/11 families critical of the Saudis, is now being closely tracked and monitored by LIV within the United States, as had been publicly reported.

14. All of these facts have led Clout, Clout employees who have spoken to me, and me personally, to fear retaliation, harassment and harm from the Kingdom or its agents in the U.S. or

3

abroad if confidential Clout internal communications, and confidential Clout communications with its 9/11 Justice client, are released to LIV.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on January 3, 2023.

*/s/ David Polyansky*
David Polyansky
