## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **LIV GOLF, INC,** | ) | |
| | ) | **Case No. 1:22-mc-00126-CJN** |
| **Movant,** | ) | |
| | ) | Underlying Case, LIV Golf, Inc., et |
| **v.** | ) | al. v. PGA Tour, Inc., pending in the |
| | ) | United States District Court for the |
| **CLOUT PUBLIC AFFAIRS, LLC,** | ) | Northern District of California: |
| | ) | |
| **Respondent.** | ) | Case No. 5:22-cv-04486-BLF |
| | ) | |

## RESPONDENT'S OPPOSITION TO MOTION TO TRANSFER

Respondent Clout Public Affairs, LLC ("Clout"), a resident of this District, opposes LIV Golf, Inc.'s ("LIV") Motion to Transfer its underlying Motion to Compel to the Northern District of California. Under Rule 45(f), LIV cannot show "exceptional circumstances" for transferring this straightforward discovery dispute from Clout's home jurisdiction to California.

## INTRODUCTION

Clout is a boutique public relations firm hired by the PGA Tour, the defendant and counterclaim/plaintiff in the underlying California antitrust case, filed by LIV and other plaintiffs. Clout has no San Francisco office and no California attorneys. Clout was not the PGA Tour's press agent; it only gave strategic advice. None of that advice ties to any California judicial district. Instead, as Clout shows in its Opposition (Doc. 11) to LIV's Motion to Compel, LIV is using non-party discovery to build an intelligence file on another Clout client: a group of 9/11 victims and families who are longtime political and legislative opponents of LIV's controller, the Kingdom of Saudi Arabia. The long-running dispute between the Kingdom and the 9/11 families is focused in this District and in a Multi-District Litigation pending in the Southern District of New York.

1

LIV cannot meet its burden of proving "exceptional circumstances" to transfer the Motion to Compel from Clout's home district to California. It identifies no concrete reason to believe that this Court's deciding the Motion will delay the underlying case. It also identifies no other motion or decision in California which has already presented, or will likely soon present, the issues raised in this District. Instead, LIV simply argues that an antitrust case is "complex," and that therefore issues of "relevance" are also "complex." But the primary issue is undue burden, not relevance. Further, the parties' relevance dispute—should the Court need to reach it—is not complex. Finally, Clout's First Amendment Privilege, which it shares with its client, 9/11 Justice, centers on advocacy partially performed in this judicial district, much of which has nothing to do with LIV or golf. It instead implicates political speech and association opposing LIV's sovereign alter ego, the Kingdom of Saudi Arabia. All of these issues should be decided by a court in this District.

## LEGAL STANDARD

"When the court where compliance [with a subpoena] is required did not issue the subpoena, it may transfer a motion . . . to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). While the rule does not explicitly define "exceptional circumstances," the advisory committee note explains that a court's "prime concern should be avoiding burdens on local nonparties subject to subpoenas." Fed. R. Civ. P. 45(f) Advisory Committee Note (2013 Amendment). It is true that "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motions or the same issues are likely to arise in discovery in many districts." *Id.* "Transfer is appropriate," however, "*only* if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Id.* (emphasis added).

There is a presumption that subpoena-related disputes be litigated in the district designated for compliance. *XY, LLC v. Trans Ova Genetics, L.C.*, 307 F.R.D. 10, 12 (D.D.C. 2014). Indeed, a court in a compliance district "must not assume [] that the issuing court is in a superior position to resolve subpoena-related motions," but should "consider . . . the complexity, procedural posture, duration of pendency, and the nature of the issue pending before or already resolved by, the issue court in the underlying litigation." *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014) (citations omitted); *see also Wultz v. Bank of China Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014). "[T]he proponent of transfer bears the burden of showing that" exceptional circumstances exist, warranting transfer. Fed. R. Civ. P. 45(f) Advisory Committee Note (2013 Amendment).

"At bottom, the established considerations appear to relate to three overarching questions: (1) whether the underlying litigation will be disrupted if the subpoena dispute is not transferred; (2) whether the nonparty subpoena recipient will suffer undue burden or cost if the subpoena dispute is transferred; and (3) whether, based on various considerations, the issuing court is in the best position to rule on the motion to compel." *In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d 372, 376 (D.D.C. 2017) (internal citation and quotation marks omitted).

## ARGUMENT AND AUTHORITIES

### I.   The Underlying Litigation Will Not be Disrupted.

LIV does not explain why there is a substantial risk that a decision by this Court—rather than the underlying forum court—will delay the case. Trial is scheduled for January 2024, and the close of discovery is apparently "moving to" March 30, 2023, about 80 days after the date the Motion to Compel will have been fully briefed. Regardless of which court decides that motion and regardless of the decision, any production would be made well before discovery closes.

Indeed, much time and expense could have been saved had LIV waited to subpoena Clout for a few months, until after LIV had received more of the PGA Tour's production. By then, LIV would likely have realized that it was unnecessary to burden a non-party. LIV attached to its Motion to Compel dozens of PGA-Clout emails it had already received from the PGA Tour, and just days before Clout's oppositions were due, LIV made a supplemental filing attaching many more items. As Clout shows in its Opposition to the Motion to Compel, it appears that even if LIV's legal theory is correct, it can fully support its arguments by relying on the PGA Tour to produce all of its communications detailing the advice and guidance Clout gave to it. *See* Clout's Opposition to Motion to Compel (Doc. 11), Section II.

LIV's real object in subpoenaing Clout, however, is to cull sensitive communications from Clout that cannot conceivably be useful in LIV's antitrust case against the PGA Tour. Specifically, LIV wants Clout's communications with 9/11 Justice, a group of victims and families who have advocated for years in favor of full disclosure and accountability regarding the Kingdom's role in the September 11, 2001 terror attacks. LIV is fully controlled by the Kingdom's sovereign wealth fund, the Public Investment Fund of the Kingdom of Saudi Arabia ("PIF"). In its Motion to Compel, LIV claims that these groups have engaged in an "astroturf" campaign against the Kingdom and LIV. *See* Motion, (Doc. 1-1). It therefore seeks information not only on Clout's work regarding LIV and golf, but chillingly, it also seeks to sift any communications Clout has had with 9/11 families about the Saudis, their sovereign wealth fund, and the agents that have been hired to track and monitor 9/11 families in the United States. *See* Clout Opposition, Doc. 11. This discovery has nothing to do with LIV or golf, and it is hardly essential that the Saudis' agents receive it on an expedited basis.

Finally, it should be significant that transfer to a foreign district after the underlying Motion to Compel is fully briefed may well pose the greatest risk of delay. Indeed, it would seem to be more efficient to simply litigate this question in this District. If LIV files replies in support of both its Motion and Transfer and the Motion to Compel, then both motions will be fully submitted for final decision no later than January 10, 2023. In contrast, if the Motion to Transfer is granted, the transferee court would not have been able to consider the underlying Motion to Compel, and a delay will ensue while local counsel is retained and the materials are considered by a new court. In short, while LIV identifies no concrete risk that key milestones in the underlying case will be delayed if the Motion to Compel is decided here, a delay will plainly result from transferring the Motion to a new court that will only be able to take it up after it receives all of the briefing.

## II.   Litigating This Dispute in a Distant Court will Unduly Burden Clout.

The "prime concern" in deciding a motion to transfer is "avoiding burdens on local nonparties." Fed. R. Civ. P. 45(f) Advisory Committee Note (2013 Amendment). Movant's attempts to downplay the burden imposed upon Clout are belied by the facts. First, the District of Columbia is Clout's hub of operations.[1] This is a home jurisdiction for Clout. Clout's attorneys are barred in this Court (as are LIV's) and can easily appear here in person, and key Clout personnel are based in this jurisdiction.[2] Clout would be able to litigate this dispute in its home jurisdiction expeditiously and without obtaining local counsel.

On the other hand, if Clout is required to travel to the Northern District of California, Clout would face significant costs and burdens which would likely cause delay. Clout has no California counsel, and it has no office, operations, or business in San Francisco, where LIV's lawsuit against

---

[1] *See* Clout's Opposition to the Motion to Compel (Doc. 11), Ex. A (Declaration of David Polyansky), ¶ 2.

[2] *Id*. at ¶¶ 2-3.

the Tour is pending.[3] Interviewing and retaining local counsel will cause delay and, since it would occur just after the holidays and would proceed on an emergency basis, will likely be far more difficult than the typical search.

LIV errantly attempts to paint these burdens as "minimal" or irrelevant under controlling authority. (Doc. 8-1 at 3, 5, 6) (relying on *Wultz* and on *Lipman v. Antoon,* 284 F.Supp.3d 8 (D.D.C. 2018)). However, *Wultz* merely rejected an argument under the "manifest injustice" standard that it would be unfair to apply changes to Rule 45 retroactively because new Rule 45 would cause re-litigation of a decided issue; it did not take the surprising position that litigation costs are not to be considered under Rule 45(f). *Wultz*, 304 F.R.D. at 45. LIV's reliance on *Lipman* is even more puzzling. There, the subpoena was issued to an attorney who was a partner, Chairman, and in a "leadership position" at the firm trying the underlying case. 284 F. Supp at 9. Where the attorney's own firm had an office in the transferee district, his firm was also trying the underlying case in that district, and his deposition would take place in his own (*i.e.*, the compliance) district, he simply had "not explained how he would be burdened by litigating the motion." *Id.*

Here, unlike *Wultz* and *Lipman*, Clout has identified the overlapping burden of the need to interview and hire local counsel, and the emergency timing unfolding just after the holidays. Movant's reliance on two inapplicable cases to overcome this Court's "prime concern" is unpersuasive. Fed. R. Civ. P. 45(f) Advisory Committee Note (2013 Amendment).

**III.     The Northern District of California is Not in a Superior Position to Resolve this Dispute, this Court is Best Situated to Resolve this Dispute.**

In evaluating whether "exceptional circumstances" are present, the Court must not "assume[] that the issuing court is in a superior position to resolve subpoena related motions."

---

[3] *Id.* at ¶ 3.

*Judicial Watch*, 307 F.R.D. at 34 (quoting Fed. R. Civ. P. 45(f) Advisory Committee Note (2013 Amendment)). Instead, the court is to look to the "complexity" and "procedural posture" of the underlying case. *Judicial Watch*, 307 F.R.D. at 34. Here, Clout's "undue burden" argument can be resolved just as readily by this Court as by the forum court because it does not hinge on relevancy. Additionally, LIV's relevancy argument does not invoke complex antitrust principles, which is one reason its Motion to Transfer clings to generalities rather than making a showing based on the actual case. Finally, Respondent relies heavily on the First Amendment Privilege it shares with its client, 9/11 Justice, and resolution of that issue is particularly appropriate for this District, where Clout and 9/11 Justice have focused much of their political advocacy and petitioning of the government.

### A. Clout's Primary Objection is Undue Burden, a Matter that is Appropriate for Any Court to Resolve.

As Clout shows in its Opposition to the Motion to Compel, a threshold question for a Rule 45 motion in this District is whether the requesting party has imposed an "undue burden." *See In re Motion to Compel Compliance with Subpoena to Dep't of Veterans Affs.*, 257 F.R.D. 12, 19 (D.D.C. 2009). "Until the [requesting party] at least makes the effort and fails for some reason not attributable to its own fault, this Court cannot possibly determine whether any subpoena…no matter how limited, is still unduly burdensome because the information sought 'can be obtained from some other source that is more convenient, less burdensome, or less expensive.' Fed. R. Civ. P. 26(b)(2)(C)(I)." *Id*.

Here, although LIV had notice that this was Clout's primary objection, its Motion to Compel largely ignored Clout's objection that the PGA Tour, a party, should first be asked for all of the work Clout had done for it. Instead, LIV's filings show that it has received a vast swath—if not all—of the PGA Tour's communications with Clout, and about Clout. Indeed, LIV continues

to receive those documents even during the briefing schedule on the Motion to Compel. *See* (Doc. 9) (supplemental filing). If for some reason the Tour has been asked but refused to produce an important part of this body of records, LIV waived its opportunity to make that demonstration in its Motion. No special tribunal steeped in antitrust principles or the facts of the case is needed to apply this basic and fundamental protection for non-party subpoena recipients. Clout should be able to petition for protection and a decision in its home forum.

**B.      This Court is Capable of Making a "Mere Relevancy Determination."**

In determining whether "exceptional circumstances" apply, courts often look to the "complexity" and "procedural posture" of the underlying case. *Judicial Watch*, 307 F.R.D. at 34. In terms of complexity, transfer is proper when resolution requires "nuanced legal analysis based on a full understanding" of the underlying action and "not a mere relevancy determination." *Fed. Home Loan Mortg. Corp. v. Deloitte & Touch LLP*, 309 F.R.D. 41, 43 (D.D.C. 2015). That is not this case.

Here, LIV's Motion to Transfer does not even present "a mere relevancy argument," instead simply waving in the direction of vague terms such as "antitrust," "complexity," "global conspiracies," and "Saudi Arabia." (Doc. 8-1 at 3). Beyond these catch-phrases, LIV does not identify any other discovery motion that did resolve, or that is impending and is likely to resolve, even remotely the same question that is presented in the Motion to Compel.[4] Nor does LIV identify

---

[4] In this case, the two non-party discovery disputes have nothing to do with the issues presented here. First, the PGA Tour subpoenaed PIF. PIF has invested "$2 billion thus far to establish and fund LIV's operations." *LIV Golf, Inc., et al. v. PGA Tour, Inc.*, Case No. 5:22-cv-004486-BLF (N.D. Cal.) ECF No. 169. PIF and LIV have the same counsel and same interests in the underlying case. The dispute over the PIF subpoena relates almost exclusively to whether the Ninth Circuit has jurisdiction over a sovereign trust fund of the Kingdom of Saudi Arabia, and whether PIF consented and agreed to service. *See* PIF Motion to Quash, ECF No. 166. The other dispute concerns the PGA Tour's subpoena of the former Player Plaintiffs. ECF No. 153. These "non-parties" were originally Plaintiffs on the underlying case. The Players voluntarily withdrew

other subpoenas seeking similar documents from similarly situated parties that could potentially be litigated in the future, even if no dispute has ripened.

Indeed, LIV's failure to provide any detail at all in its Motion strongly suggests that it knows the relevancy question presented here will not be presented at all in pretrial discovery disputes. LIV has a unique relevancy theory. It claims to seek Clout's documents because they will allegedly show that the PGA Tour's concern that golfers would be tainted by the Saudis' terrible reputation on a variety of grounds—September 11, the murder of Washington Post journalist Jamal Khashoggi, human rights, and support for Russia's campaign not to increase global oil production—was pretextual. See Motion (Doc. 1-1) at 13. In other words, LIV would try to prove that American anti-Saudi sentiment is a myth; the Tour does not believe it exists; and it was in fact all recently created by the Tour with Clout's advice. As Clout's Opposition to the Motion shows, however, that relevancy argument is illogical and at minimum depends on a factual condition that LIV cannot establish. Doc. 11, p. 28-30.

First, LIV's theory requires someone to believe that a rational PGA Tour that was concerned about the Saudis tainting top golfers, and thereby tainting the sport, would sit by quietly in the hopes that the media and public would simply forget to ask about a hot political issue and would never notice LIV's launch as a Saudi sports-washing endeavor. In reality, as Clout shows in its Opposition and as common sense would seem to require, an entity worried about the Saudi taint would call it out before it was too late, ensure golfers and the public were informed of the

---

only after the court denied a temporary restraining order, finding *inter alia* that the Players suffered no irreparable harm due in part to their massive LIV paychecks. ECF No. 63 (noting "almost without a doubt . . . [the Players] will be earning more money" with LIV). On the sole issue presented, the Court held "[i]t is not credible that the Players cannot obtain responsive documents for their own [sports] agents," and the agents were thus "under the control" of the Players. ECF No. 160.

danger, and ally with longtime Saudi critics like the 9/11 victims and families. Doc. 11, p. 29. That is what Clout advised and what the PGA Tour did. *Id.* For this reason alone, LIV's "pretext" argument is weak.

But second, LIV simply assumes key facts that it can never prove. LIV assumes the Saudis enjoy a sterling reputation with the American public and both political parties, and that it could only be the PGA Tour and a boutique public relations firm like Clout that could turn opinion against them. If that condition were proven true and LIV could also surmount the serious legal flaws in its pretext argument, then the extent of the Tour's press operation might become relevant for purposes of party discovery. Yet LIV has not even tried to make that showing here.

The parties have more fully briefed the issue in the Motion and Opposition, but in short, the Court need not "delve into the intricacies" of antitrust law, and this motion is not "knee-deep in the nuances of the underlying litigation" as LIV claims. (Doc. 8-1 at 1). This is, at most, a "mere relevancy" determination, which does not qualify as exceptional circumstances." *Fed. Home Loan Mortg. Corp*, 309 F.R.D. at 43.

### C.   Respondent's Response and Defense Pertains to the First Amendment, a Subject in Which this Court is Well Versed.

A crucial part of Clout's Opposition rests upon its shared First Amendment Privilege with its client, 9/11 Justice. In short, Clout argues that confidential communications made between parties who have associated for the purposes of political speech, advocacy, or petitioning the government, are protected from civil discovery where their disclosure threatens to chill the parties' political speech and association. *See* Clout's Opposition to Motion to Compel, (Doc. 11) Section IV.

Courts in this district have previously refused to transfer motions to compel that hinge on First Amendment privileges that are collateral to the main issues in the case. For example, in *Hood*

*v. City of Chicago*, this Court denied a motion to transfer. No. 1:19-mc-00123(APM), 2019 WL 5295169 at *2-3 (D.D.C. Oct. 18, 2019). The *Hood* court found exceptional circumstances did not exist because "the issues presented [were] not complex, and they [did] not rest on facts or law that the [underlying court was] uniquely positioned to decide." *Id.* at *3. Those issues specifically involved a First Amendment claim of reporter's privilege. *Id.*

Here, as in *Hood*, the question of whether courts could compel Clout to give LIV access to confidential communications between Clout and its 9/11 Justice client about the Saudis and their hired agents on American soil—particularly those having nothing to do with LIV or golf—does not rest on the facts or law of the underlying case. In a judicial district where many nonprofit groups and public relations firms are headquartered, and where they frequently engage in advocacy and petitioning of the federal government, the application of the First Amendment Privilege is familiar. *See, e.g., Australia/Eastern U.S.A. Shipping Conference v. United States*, 537 F. Supp. 807, 809 (D.C.C. 1982); *Int'l Union v. Nat'l Right to Work Legal Defense and Ed. Found., Inc.*, 590 F.2d 1139, 1152 (D.C. Cir. 1978). *Black Panther Party v. Smith*, 661 F.2d 1243, 1266 (D.C. Cir. 1981), vacated as moot sub nom. *Moore v. Black Panther Party*, 458 U.S. 118, 102 S. Ct. 2505 (1982). Clout and 9/11 Justice have both depended on the federal courts' application of the privilege in either headquartering here or focusing their First Amendment-protected speech and petitioning here. No exceptional circumstances justify transferring the adjudication of their shared privilege to the Northern District of California.

**CONCLUSION**

For the foregoing reasons, this Court should deny the Motion to Transfer and take up

LIV's Motion to Compel.


Date: January 3, 2023                                    Respectfully submitted,

                                                        **GRAVES GARRETT, LLC**

                                                        */s/ Edward D. Greim*
                                                        Edward D. Greim (DDC Bar No. MO-008)
                                                        Graves Garrett, LLC
                                                        1100 Main Street, Suite 2700
                                                        Kansas City, Missouri 64105
                                                        Tel.: (816) 256-3181
                                                        Fax: (816) 222-0534
                                                        edgreim@gravesgarrett.com

                                                        *Attorney for Respondent*


**CERTIFICATE OF SERVICE**

I hereby certify that on January 3, 2023, a true and correct copy of the foregoing was
filed using the Court's CM/ECF system, which will send an electronic notification to all counsel
of record.


                                                        */s/ Edward D. Greim*
                                                        Attorney for Respondent