UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| LIV GOLF, INC., <br><br> Movant, <br><br> v. <br><br> CLOUT PUBLIC AFFAIRS, LLC, <br><br> Respondent. | Misc. Case No. 1:22-mc-00126-CJN <br><br> Underlying Case, *LIV Golf, Inc., et al. v. PGA Tour, Inc.*, pending in the United States District Court for the Northern District of California: <br><br> Case No. 5:22-cv-04486-BLF |

**LIV GOLF, INC.'S REPLY TO ITS
MOTION TO TRANSFER THE MOTION TO COMPEL**

Clout's opposition brief demonstrates the need to transfer the motion to the issuing court in the Northern District of California. Clout is trying to trick the Court. It takes positions on relevance that are diametrically opposite those taken by the PGA Tour ("the Tour"), its client, in the underlying litigation. Clout further makes claims that make little to no sense in the context of the underlying case. For instance, Clout argues that the subpoena "is really an effort to build an intelligence file on another Clout client." Opp. at 1. But the court in the underlying litigation has entered a protective order that limits certain materials to "attorney's eyes only" and has further protections for third-party confidentiality. That court would see right through Clout's claims—which Clout hopes *this* Court will overlook due to its unfamiliarity with the action.

Clout's client, the Tour, has previously claimed it would be "bad faith" to oppose a motion to transfer because it would engender delay, in part, by imposing a motion on a court with no familiarity with a complex case and discovery history. These same factors counsel in favor of transferring the motion, as courts have done on similar facts. *See Coalition for App Fairness v. Apple Inc.*, 2021 WL 3418805, at *2 (D.D.C. Aug. 5, 2021) (transferring subpoena motions related to a political coalition

firm that raised First Amendment issues due to complexity of underlying antitrust suit); *Google, Inc. v. Digital Citizen Alliance*, 2015 WL 4930979, at *5 (D.D.C. July 31, 2015) (transferring subpoena motions related to a "small" political action group due to issues of relevance and rapidly advancing discovery in the underlying case). Clout cannot muster a single case that denied transfer where relevance to a complex and rapidly advancing case was central.

If any doubt remains, Clout's burden arguments confirm its disingenuous position. Clout has gone to extreme lengths to impose a burden on the Court: LIV filed a targeted 18-page motion to compel on a narrow discovery issue, and Clout responded with a 45-page opposition replete with categorical—and false—statements about relevance. Despite this conduct, Clout's purported burden of transfer collapses under scrutiny. Clout has an office in the Northern District of California; its President lives in Texas; and its counsel's office is in Kansas City, which is equidistant to DC and San Jose, California. The entirety of Clout's burden comes down to finding local counsel—which is precisely the type of "litigation cost" that courts have uniformly rejected as a burden in this context. *See, e.g.*, *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 47 (D.D.C. 2014) ("It is only the rare and extreme circumstance in which litigation costs result in prejudice.").

At bottom, as Clout's own opposition demonstrates, the dispute requires the input of the issuing court, which is fluent in the facts and arguments of the case and is in a much better position to call balls and strikes on Clout's reckless arguments. Transfer should be granted as expeditiously as convenient to the Court.

## **ARGUMENT**

### I.    **Clout's Opposition Demonstrates the Need to Transfer.**

Clout's opposition confirms every concern raised in the motion to transfer. In the underlying action, the Tour (Clout's client) has argued that it would be "bad faith" to oppose

2

transfer of subpoena motions because it would engender delay, including by imposing a motion on a court with no familiarity of the complex case and its discovery history. Surprenant Decl. ¶ 2. Clout now pursues the same strategy, seeking to burden a court with no familiarity of the facts with intensive briefing in the hope that it delays resolution of the dispute and prevents discovery. This attempt should be rejected. The subpoena motions should be transferred to the Northern District of California to ensure their fair and efficient resolution by the issuing court.

*The Dispute Centers on Relevance*: The terms "relevant" or "relevance" appear 39 times in Clout's motion to compel opposition. That is because Clout seeks to have this Court decide relevance with an incomplete picture. According to Clout, the Court can decide whether the Tour's "Saudi taint" defenses are pretextual categorically by looking at news articles about anti-Saudi sentiment preexisting Clout's campaign. But the issue as to pretext is not generic public opinion; it is whether *the specific bias against LIV* was manufactured by Clout. And contrary to Clout's suggestion, the issue of pretext cannot be resolved with a single case cite and vague musings on the ultimate causes of anti-Saudi sentiment. Finally, Clout's oppositions to the motion to transfer and compel ignore—whether by design or its own inability to grasp the complexities of this case— several categories of relevance raised in LIV's motion to compel.

Clout's strategy is clear: it hopes that by inviting the Court to make out-of-context rulings on relevance, it can avoid discovery that its own involvement in the litigation requires. The Court should reject this attempt. The issuing court "is far more capable of making [relevance determinations] within the short discovery window," and should do so here. *In re Braden*, 344 F. Supp. 3d 83, 94 (D.D.C. 2018); *see also XY, LLC v. Trans Ova Genetics, L.C.*, 307 F.R.D. 10, 12 (D.D.C. 2014) (the relevance argument "emphasizes the need for the court where the underlying matter lies to decide the matter"); *In re Nonparty Subpoenas Duces Tecum*, 327 F.R.D. 23, 25 (D.D.C. 2018)

(transferring subpoena motion that "rests on factual and legal developments that the underlying court will be in a better position to manage").

***Undue Burden Centers on Discovery Conduct:***  Clout claims that the "primary issue" of the subpoena motion is undue burden, rather than relevance.  But its main undue burden argument is that information sought can be obtained from the Tour—which itself requires consideration of the Tour's discovery conduct in the underlying action.  Contrary to Clout's suggestion, the Tour has stymied LIV's efforts to obtain discovery at every turn, including by Clout's effort to conduct the anti-LIV campaign without the Tour's "fingerprints."  The exhibits attached to LIV's motion to compel were fought tooth-and-nail over strenuous objections by the Tour.  Indeed, at the time of the filing of this motion, LIV and the Tour are preparing a discovery letter to the court regarding the Tour's failure to provide discovery about its efforts to smear LIV.  Further, due to a supposed error from its e-discovery vendor, the Tour did not produce two-months' worth of communications by the substantial completion deadline of November 18, 2022.

Clout's undue burden arguments thus confirm—rather than disprove—the need for the issuing court to decide the subpoena motion.  Only the issuing court will have intimate and readily-accessible knowledge of the discovery that the Tour produced (and failed to produce), the discovery disputes pending and that have already been resolved, and the information that can only be obtained from Clout.  This Court should again reject Clout's invitation to decide the issues in the abstract without the necessary knowledge of the complex facts of the underlying litigation.

***Clout Seeks Inconsistent Rulings:***  The risk of "conflicting rulings" are a primary reason to transfer subpoena motions.  *Honeywell Int'l Inc. v. Law Offices of Peter T. Nicholl*, 2022 WL 43494, at *3 (D.D.C. Jan. 5, 2022).  Rather than mitigating this risk, Clout openly invites the Court to make inconsistent rulings contrary to the arguments made by the Tour, its client, in the underlying litigation.

4

In the underlying case, the Tour has argued that discovery about LIV's Saudi Arabia funding is "critical to [its] defenses and its counterclaim for tortious interference." *Mickelson v. PGA Tour, Inc.*, Case No. 5:22-cv-04486-BLF, Dkt. No. 181 at 5. Less than a month ago, the Tour attempted to delay the trial schedule due to a discovery dispute about LIV's investor, the Public Investment Fund of the Kingdom of Saudi Arabia.[1] *See id*. Dkt. Nos. 181, 166. But Clout now claims that certain documents are irrelevant because they "have nothing to do with LIV or golf, and instead [concern] communications regarding LIV's Saudi controllers." Opp. at 34. That's not all. Clout claims that its internal communications are not relevant because "what is relevant is . . . the PGA Tour's own intentions, knowledge and instructions." *Id*. at 30. But in the underlying case, the Tour has sought discovery from LIV's Saudi investors about anti-Saudi sentiment—precisely the type of internal information unrelated to the Tour's own "intentions, knowledge, and instructions."

In short, Clout openly invites this Court to make inconsistent rulings contrary the Tour's arguments in the Northern District of California. This attempt should be rejected, and the issuing court should decide the issues to maintain consistency.

***The Issuing Court Can Quickly Resolve the Dispute:*** After filing a 45-page brief in response to an 18-page discovery motion, Clout claims that this Court can resolve the dispute more quickly than the issuing court. That is incorrect. As detailed further below, the issuing court can cut through Clout's obfuscation based on basic procedural and case knowledge. For example, the issuing court can easily determine (1) the sufficiency of the protective order in place to protect Clout and its clients and their supposed First Amendment rights, (2) the discovery that can properly be obtained from Clout, rather than the Tour and party discovery, and (3) the relevance of Clout's

---

[1] The dispute over the Public Investment Fund's funding is not limited to jurisdiction; relevance is also key. *See id*. Dkt. 166 at 19-22.

campaign against LIV and its Saudi investors to the underlying action. Indeed, the magistrate judge in the underlying case has resolved most disputes using only a few pages.

And speed is of the essence. As explained in LIV's opening brief, the underlying action is advancing quickly towards close of document discovery in March 2023. The issuing court has already resolved multiple discovery disputes across three discovery conferences, multiple case management conferences, and a temporary restraining order hearing. That Court's familiarity with the action, coupled with its management of the fast-paced litigation, make it better suited to resolve the dispute. *See Coalition for App Fairness*, 2021 WL 3418805, at *2 (transferring motions where the issuing court has a "streamlined process for resolving disputes" and has addressed similar issues); *Honeywell*, 2022 WL 43494, at *3 (finding that waiting to "familiarize itself with the underlying action" would "risk disrupting the other court's case management order").

***The First Amendment Should Be Considered by the Issuing Court:*** Clout claims the First Amendment issues counsel against transfer. That argument fails for three reasons. First, multiple courts have transferred subpoena motions involving First Amendment disputes, especially when they "require careful sifting of the facts in the underlying cases." *E.g.*, *Coalition for App Fairness*, 2021 WL 3418805, at *2. Clout's own opposition suggests that the First Amendment issue may require considering "the need for information sought." Opp. at 37. Clout's case, *Hood v. City of Chicago*, 2019 WL 529169, at *2-3 (D.D.C. Oct. 18, 2019), involved issues that were "not complex" and did "not rest on [underlying] facts or law," which is not the case here.

Second, Clout's First Amendment claim is premised on the notion that the subpoena is meant to "build intelligence against" Clout's clients. Opp. at 34. But the underlying suit has a protective order in place that protects against disclosure. *Mickelson v. PGA Tour, Inc.*, Case No. 5:22-cv-04486-BLF, Dkt. No. 111. For example, the parties can agree to designate certain materials as "attorneys' eyes only" to prevent disclosure to any client. *Id.* at 3; *see Sines v. Kessler*, 2018 WL

6

3730434, at *7 (N.D. Cal. Aug. 6, 2018) (rejecting First Amendment subpoena challenge where a protective order "allows material to be classified into different categories, thereby placing restrictions on the people who can see information in each classification").  The issuing court is far better suited to decide the sufficiency of these and other protections on Clout's supposed associational rights in the underlying litigation.  *See In re Anonymous Online Speakers*, 661 F.3d 1168, 1176-78 (9th Cir. 2011) (finding that "a protective order is just one of the tools available to the district court to oversee discovery of sensitive matters that implicate First Amendment Rights").

Finally, Clout's claim that it "depended" on courts in this district and their application of First Amendment law is meritless.  The First Amendment law here is federal, and courts are supposed to apply it uniformly in every circuit.  There is no basis for Clout's "choice" of one circuit's case law.  And Clout had full knowledge of the pending motion to transfer when it drafted its opposition.

**II.    Clout Would Not Be Unduly Burdened by the Transfer.**

Rather than addressing the facts in LIV's motion, Clout argues that transfer of the subpoena motions would unduly burden it.  But the sole "burden" identified by Clout is that "if Clout is required to travel to the Northern District of California, Clout would face significant costs and burdens," including "[i]nterviewing and retaining local counsel" right "after the holidays."  Opp. at 5-6.  That claim collapses under scrutiny.

As an initial matter, neither Clout's President nor its counsel are based in Washington, DC.  Clout's attorneys are based on Kansas City, Missouri, as shown in the signature block of their opposition briefs.  Clout's President resides in Texas. ECF No. 11-1, Polyansky Decl. ¶ 2.  Both of these places are substantially equidistant from Washington, DC and San Jose, California, where the issuing court is located.  And Clout has an office in the Northern District of California, even if

it is not in the exact city the issuing court is located.² Thus, even in the chance that Clout had to travel for the subpoena motions, it would face comparable burdens regardless of which court decides the motion. *See Digital Citizen Alliance*, 2015 WL 4930979, at *5 (finding the burden of potential travel on a "small office" with "three employees" to not prevent transfer); *see also In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d 372, 380 (D.D.C. 2017) (finding "unlikely" that subpoenaed party would even be required to travel to the issuing court district).

Nor is the "burden" of finding local counsel more than *de minimis*. Clout ignores the widespread practice of *pro hac vice* admissions that would allow its Kansas City counsel to continue representing it in the Northern District of California. Clout also never explains why the timing of the transfer ("after the holidays," i.e., in January) would involve increased burden or why it would proceed "on an emergency basis." Opp. at 5-6. Nor is there any other burden. Clout states that it has only a "few thousand" documents, and LIV will reimburse its reasonable costs for production. ECF No. 1-2, Exhibit 26, at 4. Such electronic costs cannot involve burden.

In short, Clout's arguments regarding burden of transfer are smoke-and-mirrors. There is no plausible burden from transfer of the subpoena motions, which is warranted regardless. *See In re Nonparty Subpoenas Duces Tecum*, 327 F.R.D. 23, 25 (D.D.C. 2018) ("Courts routinely transfer subpoena-related motions—even over objection—due to the complexity of the underlying case, or because the issuing court is grappling with related issues.").

## **CONCLUSION**

For the reasons described above, this Court should transfer this action to the issuing court in the Northern District of California.

---

² *See* Clout, Who We Are, https://cloutpublicaffairs.com/who-we-are/.

Dated: January 5, 2023 /s/ Keith Forst
Keith H. Forst (DC Bar No. 478775)
QUINN EMANUEL URQUHART & SULLIVAN LLP
1300 I Street NW, Suite 900
Washington, District of Columbia 20005
Tel: (202) 538-8000
Fax: (202) 538-8100
keithforst@quinnemanuel.com

DOMINIC SURPRENANT *pro hac vice pending*
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
dominicsurprenant@quinnemmanuel.com

RYAN SWINDALL *pro hac vice pending*
QUINN EMANUEL URQUHART & SULLIVAN LLP
1200 Abernathy Road, Suite 1500
Atlanta, GA 30328
Telephone: (404) 482-3502
ryanswindall@quinnemmanuel.com

*Attorneys for Movant LIV Golf, Inc.*

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on January 5, 2023, a true and correct copy of the foregoing and related proposed order were served on counsel for Clout Public Affairs, LLC, who agreed to electronic service, using the below email address:

  Edward D. Greim:    edgreim@gravesgarrett.com

                */s/ Keith Forst*
                Keith H. Forst