# Proposed Sur-Reply

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| LIV GOLF, INC, ) | |
| ) | Case No. 1:22-mc-00126-CJN |
| Movant, ) | |
| ) | Underlying Case, LIV Golf, Inc., et |
| v. ) | al. v. PGA Tour, Inc., pending in the |
| ) | United States District Court for the |
| CLOUT PUBLIC AFFAIRS, LLC, ) | Northern District of California: |
| ) | |
| Respondent. ) | Case No. 5:22-cv-04486-BLF |
| ) | |

**RESPONDENT'S SUR-REPLY IN OPPPOSITION TO THE MOTION TO COMPEL**

Clout respectfully submits this Sur-Reply based on two new concessions LIV makes, and two new arguments LIV raises based on newly-produced documents, in its Reply (Doc. 17).

**I.      LIV's concessions should narrow this dispute.**

LIV's Reply makes an important concession that narrows this dispute. It "amends" its Request 7 so that it no longer seeks communications between Clout and its 9/11 Justice client or other 9/11 victims or families that relate to the "September 11, 2001 terrorist attacks" or "Saudi Arabia" (a broad term which also includes its sovereign wealth fund, the Public Investment Fund ("PIF"), and any of the Kingdom's other U.S. agents). Reply (Doc. 17) at 4. LIV's concession comes after it fails to deny that—as Clout has objected from the start—its Subpoena seeks Clout communications with 9/11 family and victim groups that are not relevant, relating purely to the victims' long-running dispute with the Kingdom.[1] LIV could have declined to move to compel

---

[1] Nor does LIV's Reply deny that it has hired a firm in the United States to track and monitor the political advocacy activities of 9/11 families and victims. *See* Clout Opposition (Doc. 11) (citing Ex. C thereto, ¶ 23, Ex. C, ¶ 23, Hailey Fuchs, *LIV Golf Enlists NRA-tied Firm as Consultants*, Politico, Oct. 11, 2022).

1

Clout to produce its non-golf communications with 9/11 Justice. Instead, it withdrew from this demand only in its Reply, at a time when Clout's only response could be by sur-reply. Importantly, LIV also for the first time stated that it was willing to receive Clout-9/11 communications on golf-related matters as Attorneys' Eyes Only, shielding them from LIV and its controller, PIF. *Id*.

These two late concessions change Clout's position and narrow the issues to be decided here. First, the Court no longer needs to reach the main thrust of Clout's objection to producing communications with its client, 9/11 Justice, because the only responsive communications will be those that relate to LIV, the PGA Tour, protests, Phil Mickelson (that is, golf), or this lawsuit. Second, with respect to communications that relate only to golf or this lawsuit, LIV's offer not to object to Attorneys-Eyes-Only[2] designations for items implicating the "privacy or safety of 9/11 victims," is a satisfactory compromise of Clout's First Amendment objections, and Clout is willing to produce such golf-related communications with its client, 9/11 Justice, under that designation.

## II. LIV's new factual arguments do not support compelling disclosure of Clout's purely internal documents.

LIV's Reply raises two new arguments to support its blanket request for all internal Clout documents—that is, individual notes or communications solely between employees of Clout. First, LIV argues that the Tour and Clout "consciously avoided written communications," citing new

---

[2] LIV incorrectly claims that Clout "smeared" its counsel and accused them of professional misconduct. Reply at 4-5. At no time did Clout attack LIV's counsel. Nor did Clout ever suggest that LIV's counsel would be complicit in the misuse of information that LIV's counsel asserted would be relevant to its case. Instead, Clout raised a First Amendment privilege claim. Such claims rest on the danger, as perceived by a reasonable person, that information disclosed in discovery may ultimately be used for harassment. *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 489 (10th Cir. 2011). They do not rest on a showing that counsel who request the data must themselves be knowingly aiding harassment. *See Apple Inc. v. Match Grp., Inc.*, No. 21MC80184YGRTSH, 2021 WL 3727067 (N.D. Cal. Aug. 19, 2021) (denying motion to compel in civil antitrust case based on "realistic effect [of] disclosure" without discussing counsel's good faith). Indeed, Clout cannot locate any case that adjudicates First Amendment privilege claims based on the subjective intent or professionalism of counsel for the requesting party.

2

exhibits attached to its Reply. *See* Reply (Doc. 17) at 10 (citing Exs. 5, 6, 11, 12). Yet LIV does not suggest that it asked the PGA Tour for its internal notes or other Tour documents relating to such verbal communications before turning to non-party Clout to make that same request. LIV should have sought those documents from the Tour, or, having done so, shown why the Tour could not produce them. *See* Opposition (Doc. 11), Section II.A. What matters is the Tour's action and its perception of the strategy that was discussed, not Clout's perception. More fundamentally, even if LIV could show a need to access Clout's own internal notes reflecting Tour communications, then its request to Clout—again, a non-party—should be for internal documents that reflect communications to or from the Tour—not for the entire mass of Clout's internal notes, intra-office communications, unshared drafts, and other preparations for engaging in political speech. This is precisely the kind of over-broad, intrusive, burdensome request of a non-party that simply goes too far. *See, e.g., In re Motion to Compel Compliance with Subpoena Direct to Dept. of Veterans Affairs*, 257 F.R.D. 12, 18-19 (D.D.C. 2009); *In re Subpoena to Goldberg*, 693 F.Supp.2d 81, 88 (D.D.C. 2010); *Diamond Services Management Company, LLC v. Knobbe, Martens, Olson & Bear LLP*, 339 F.R.D. 334, 339-340 (D.D.C. 2021).

Second, LIV argues that Clout took actions on the PGA Tour's behalf without notifying the Tour. *See* Reply (Doc. 17) at 12 (citing Exs. 41, 49, 50). As an initial matter, none of the attached exhibits—which simply report Clout's contacts with outside individuals—actually state that this occurred, or that Clout made significant communications on its own. But more importantly, if LIV is truly concerned that its discovery of Tour-Clout communications will fail to document relevant Clout activity on behalf of the Tour, then LIV should seek documents tailored to that concern: Clout's communications with individuals outside of Clout on behalf of the Tour. LIV's new argument can be addressed by a production of Clout's records of its outside

3

communications; LIV simply makes no showing that a sweeping production of all of Clout's internal records is necessary.

## Conclusion

For the foregoing reasons, LIV's Motion to Compel should be denied in part on the merits, and in part as moot based on LIV's concessions and this response.

Date: January 16, 2023

Respectfully submitted,

**GRAVES GARRETT, LLC**

*/s/ Edward D. Greim*
Edward D. Greim (DDC Bar No. MO-008)
Graves Garrett, LLC
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Tel.: (816) 256-3181
Fax: (816) 222-0534
edgreim@gravesgarrett.com

*Attorney for Respondent*

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2023, a true and correct copy of the foregoing was filed using the Court's CM/ECF system, which will send an electronic notification to all counsel of record.

*/s/ Edward D. Greim*
Attorney for Respondent