UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| LIV GOLF, INC., <br><br> Movant, <br><br> v. <br><br> CLOUT PUBLIC AFFAIRS, LLC, <br><br> Respondent. | Misc. Case No. 1:22-mc-00126-CJN <br><br> Underlying Case, *LIV Golf, Inc., et al. v. PGA Tour, Inc.*, pending in the United States District Court for the Northern District of California: <br><br> Case No. 5:22-cv-04486-BLF |

**LIV GOLF INC.'S SUR-SUR-REPLY IN SUPPORT OF MOTION TO COMPEL CLOUT PUBLIC AFFAIRS, LLC TO COMPLY WITH SUBPOENA**

LIV respectfully submits this Sur-Sur-Reply based on new arguments presented and misstatements made in Clout's Sur-Reply (Dkt. 21-1).

## I. Clout's Concessions and Misstatements Regarding 9/11 Groups

Clout's principal contention in its Response in Opposition to LIV's Motion to Compel was that the subpoena was "really an effort to build an intelligence file on another Clout client: 9/11 Justice." Rspn. at 1; *see id.* at 25-26, 32-34 (similar). In its reply, LIV thoroughly refuted that baseless (and scandalous) allegation. Reply at 3-5. To remove even the shadow of doubt, LIV clarified that it was eliminating "Saudi Arabia" and "the September 11, 2001 terrorist attacks" from Request No. 7, and that LIV would not object to an Attorneys'-Eyes-Only production of responsive communications that implicate the privacy or safety of 9/11 victims. *Id.* at 4-5.[1]

Realizing the seriousness of its accusations—and, perhaps, its obligations under Rule 11—Clout has now retreated from its central claim that the subpoena represents an improper attempt to compile an "intelligence file" on 9/11 families. *See* Sur-Reply at 1-2. With that retreat, most of Clout's objections fall away, and the subpoena is plainly proper under settled principles of discovery.[2]

---

[1] Clout and its counsel have been aware of the protective order since at least December 13, 2022, when LIV's counsel provided it to Clout's counsel. The protective order is also publicly filed on the docket of the underlying action.

[2] LIV has not conceded that "its Subpoena seeks Clout communications with 9/11 family and victim groups that are not relevant." Sur-Reply at 1. The portions of LIV's subpoena at issue were relevant to LIV's reasonable belief that the Tour funded 9/11 organizations to foment anti-LIV sentiment by attempting to tie LIV to Saudi Arabia. Nevertheless, LIV narrowed the subpoena in the interest of efficiency and in the face of Clout's outlandish accusations. The written discovery deadline is fast-approaching, and the subpoena has been outstanding for two-and-a-half months.

1

## II. Clout's Internal Documents Remain Relevant and Discoverable

Clout continues to object to production of its internal communications. *See* Sur-Reply 2 at 4. LIV has already refuted that argument in detail. *See* Reply at 10-13; Mot. at 13-16. Nevertheless, Clout continues to insist that, because the Tour may have notes of oral communications, LIV does not need Clout's notes. As an initial matter, that is illogical; the very purpose of the Tour utilizing oral communications was to not have written records. But even if the Tour took notes of these oral conversations, which LIV has asked for in party discovery, LIV is entitled to Clout's contemporaneous notes, which may have additional or different information. Further, Clout is the party executing the Tour's commands, so Clout's interpretation of the Tour's commands is what is in fact being executed. Clout's documents have even greater importance.

Clout also argues that this category should be limited to "internal documents that reflect communications to or from the Tour." Sur-Reply at 3. But every internal document responsive to the subpoena necessarily reflects communications to or from the Tour; it is all work in relation to the smear campaign that the Tour hired Clout to conduct. Even if Clout's proposed limitation made sense and a line could properly be drawn, the limitation would be more burdensome than simply producing all responsive documents.

Finally, the exhibits show that Clout employees undertook actions without telling the Tour and only notified the Tour after the fact and when specifically asked by the Tour. Clout's internal communications, again, reflect the full scope of the smear campaign, including those actions and aspects for which Clout never informed the Tour. They are thus discoverable.

Dated: January 17, 2023

/s/ Keith Forst
KEITH H. FORST (DC Bar No. 478775)
CHRISTOPHER G. MICHEL (DC Bar No.1034557) *pro hac vice*
QUINN EMANUEL URQUHART & SULLIVAN LLP
1300 I Street NW, Suite 900
Washington, District of Columbia 20005
Tel: (202) 538-8000
Fax: (202) 538-8100
keithforst@quinnemanuel.com
christophermichel@quinnemanuel.com

JOHN B. QUINN *pro hac vice*
DOMINIC SURPRENANT *pro hac vice*
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
johnquinn@quinnemanuel.com
dominicsurprenant@quinnemmanuel.com

RYAN SWINDALL *pro hac vice*
QUINN EMANUEL URQUHART & SULLIVAN LLP
1200 Abernathy Road, Suite 1500
Atlanta, GA 30328
Telephone: (404) 482-3502
ryanswindall@quinnemmanuel.com

*Attorneys for LIV Golf, Inc.*

3

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on January 17, 2023, a true and correct copy of the foregoing were served upon all counsel of record by filing the same with the Court's ECF system.

                                                                    */s/ Keith Forst*
                                                                    Keith H. Forst